IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES W. BAGLEY, TRUSTEE OF THE BAGLEY FAMILY REVOCABLE TRUST, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACT. NO. 1:12cv620-CSC (WO) |
| PETER L. CASH, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

This case involves a dispute between plaintiff James W. Bagley ("Bagley"), the Trustee of the Bagley Family Revocable Trust ("the Trust"), and defendant Peter L. Cash ("Cash"). Bagley filed this breach of contract claim against Cash to secure monies Bagley asserts Cash owes the Trust under the terms of a Guaranty Agreement. Cash makes no counterclaims in this action. The court has jurisdiction of this case pursuant to its diversity jurisdiction. *See* 28 U.S.C. § 1332. The parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.

This matter is now pending before the court on Bagley's motion for summary judgment filed on December 3, 2012. *See* Doc. # 16. Cash has filed a response. *See* Doc. # 18. Upon consideration of the motion, pleadings, response and evidentiary material filed in support of and in opposition to the motion, the court concludes the plaintiff's motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][1] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a

---

[1]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the plaintiff's properly supported motion for summary judgment, the defendant is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th

Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is

4

admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

In 2007, James Bagley, on behalf of the Trust, entered into a series of business ventures with Cash, none of which turned out as the principals envisioned. One such venture involved the sale of stock in MA Manufacturing Company, Inc. ("MA Manufacturing") in March 2007. Cash was the sole stockholder of MA Manufacturing.

On March 28, 2007, Bagley Trust purchased from Cash fifty one percent (51%) of the outstanding stock in MA Manufacturing pursuant to a Stock Transfer Agreement. In conjunction with the stock sale, the Trust loaned MA Manufacturing fifteen million dollars

($15,000,000).  As it's president, Cash signed the promissory note on behalf of MA Manufacturing. (Doc. # 16, Ex. 1). The promissory note specified interest on the note in the amount of 7.5% per annum. (*Id*).

Cash also signed a guaranty agreement in which he guaranteed MA Manufacturing's indebtedness to the Trust. (*Id*. at Ex. 2). In pertinent part, Cash guaranteed MA's loan from the Trust as follows:

> The term "Guaranteed Indebtedness," as used herein, consists of that certain promissory note in the original principal amount of $15,000,000 dated of even date herewith, executed and delivered by MA and payable to the order of Creditor, and any renewal or extension of the principal amount of such note, and accrued but unpaid interest thereon of the aforementioned promissory note, and all expenses of collection incurred by Creditor attempting to collect upon the promissory note, if any, including without limitation, reasonable attorneys' fees, <u>provided, however, that the Guarantor's liability shall be limited to forty nine percent (49%)</u> of any such amounts.

(*Id*. at Ex. 2, ¶ 1) (emphasis in original).

> As the Guarantor, Cash further agreed that his
>
> obligations under the terms of this guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination, or loss of any security at any time in connection with any or all of the Guaranteed Indebtedness; (c) any partial release of the liability of Guarantor . . .; (d) the death, insolvency, bankruptcy, disability, or lack of corporate power of Guarantor, . . . whether now existing or hereafter occurring; . . .

(*Id*. at Ex. 2, ¶ 4).

Finally, the Guaranty Agreement specifically states that it is for the benefit of the Creditor *only*. (*Id*. at ¶ 5) (emphasis added).

Cash asserts that in 2008, "a dispute arose between [him] and Mr. Bagley and Mr. Bagley voted and issued himself more stock in a deliberate maneuver to dilute [Cash's] ownership in the company."[2] (Doc. # 18-1, Declaration Peter Cash, at 2, ¶ 6). According to Cash, the guaranty agreement was based on his percentage of ownership in the company. (*Id*. at ¶ 10). Thus, while Cash does not dispute that he signed the Guaranty Agreement or that he owes some amount under the agreement, he disputes that he owes 49% of the loan. Rather, he contends he should only be required to pay 0.49% of the debt which equates to the percentage of his current ownership in MA Manufacturing.

## DISCUSSION

To establish a breach of contract claim under Alabama law, Bagley must establish the following elements:

> (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.

*Employees' Benefit Assoc. v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998) quoting *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). There is no dispute that the Guaranty Agreement constitutes a valid contract and that the Trust performed under the

---

[2] Cash's description of his difficulties with Bagley is generous. During the period of time when Bagley and Cash were engaged in business ventures together, Cash was engaged in a business of his own. Beginning in October 2005 and continuing until July 2008, Cash operated a "check kiting" scheme to defraud two banks, by engaging in fraudulent activities to obtain loans using the businesses in which he was involved with Bagley. *See United States v. Cash*, Crim. No. 1:10cr185-WKW (M.D. Ala.) (Doc. # 1, Information; Doc. # 8, Plea Agreement). This is not the first action Bagley has pursued to recoup monies invested with Cash. *See Mobile Attic, Inc. v. Cash, et al*, 1:09cv24-MHT-CSC (M.D. Ala., 2012).

contract by loaning MA Manufacturing $15,000,000. Cash does not dispute that he has failed to perform his obligation under the Guaranty Agreement. Rather, he argues that because his ownership interest in MA Manufacturing has been reduced from 49% to .49%, "his percentage of the debt should also be readjusted,..." (Doc. #18, Def's Resp. at 4). In response to the motion for summary judgment, Cash "consents to a judgment against him being issued based on his percentage of ownership in the company under the guaranty agreement, i.e., .49%." (*Id*. at 5).

> "Rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract. 38 AM.JUR.2D GUARANTY, § 70 (1968); *Pate v. Merchants Nat'l Bank,* 428 So.2d 37 (Ala. 1983); *Colonial Bank of Alabama v. Coker,* 482 So.2d 286 (Ala. 1985). '[A] guarantor is bound only to the extent and in the manner stated in the contract of guaranty.' *Pate v. Merchants Nat'l Bank,* supra, at 39 (quoting *Furst v. Shows,* 215 Ala. 133, 137, 110 So. 299, 302 (1926)). When the terms of a contract are unambiguous, it is the court's duty to analyze and determine the meaning of the contract, *Pate v. Merchants Nat'l Bank,* supra at 39; *Birmingham Trust Nat'l Bank v. Midfield Park, Inc.,* 295 Ala. 136, 138, 325 So.2d 133, 134 (1976); and, when appropriate, those questions may be decided by summary judgment. *Williams v. Bank of Oxford,* 523 So.2d 367 (Ala.1988); *Medley v. SouthTrust Bank*, 500 So.2d 1075 (Ala.1986); *Colonial Bank v. Coker,* supra.... Absent fraud in the inducement, an absolute guaranty will be enforced according to its terms...."

*Eagerton v. Vision Bank*, 99 So. 2d 299, 204 (Ala. 2012) quoting *Government St. Lumber Co. v. AmSouth Bank*, 553 So.2d 68, 75 (Ala.1989)

The terms of the guaranty agreement Cash's position do not support Cash's position. The agreement defines the "Guaranteed Indebtedness" as the $15,000,000 promissory note loaned to MA Manufacturing, unpaid interest on the note, and "all expenses of collection"

8

incurred by the Trust. (Doc. # 16, Ex. 2 at ¶ 1). The agreement specifically limits Cash's guarantee to forty nine (49) percent of "any such amounts" referring to the $15,000,000 promissory note, unpaid interest and expenses of collection. (*Id*.) "[W]hen a contract is clearly stated and expresses the intent of the parties, it will be so applied." *Birmingham Trust Nat'l Bank v. Midfield Park, Inc.*, 325 So. 2d 133, 134 (Ala. 1976) quoting *Franklin Life Ins. Co. v. Brantley*, 165 So. 834, 835 (Ala. 1936).

In opposition to summary judgment, Cash asserts that "[t]he Guaranty Agreement clearly shows liability at the time being limited to percentage of ownership." (Def's Res. to Pl's Mot. for Summ. J., at 5). He is simply wrong. The agreement clearly states that Cash guaranteed the "Guaranteed Indebtedness." The agreement in no way limits Cash's guaranty to the percentage of his stock or ownership in MA Manufacturing.[3] His guarantee is tied to the indebtedness on the $15,000,000 loan; it is not limited to a percentage of his ownership in MA Manufacturing. The agreement very specifically limits Cash's liability to forty nine percent (49%) of the "Guaranteed Indebtedness" which includes the original $15,000,000 promissory note, any accrued but unpaid interest, and all expenses of collection. (Doc. # 16, Ex. 1 at 1, ¶ 1.). Accordingly, the court concludes that the guaranty agreement executed by Cash is clear and unambiguous. *See McCollough v. Regions Bank*, 955 So. 2d 405, 411 (Ala.

---

[3] Cash complains about the manner in which Bagley operated MA Manufacturing. Cash suggests that by the issuance of additional stock, Bagley deliberately diluted Cash's ownership. Consequently, Cash, argues that it would not be "equitable" to make him pay 49% of the debt when he only owns .49% of the company. Cash has not brought a counterclaim, and the court cannot, and will not, read one into the case at this juncture. *See generally, Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004). (a party "may not amend [its] complaint through argument in a brief opposing summary judgment.")

2006) (holding guaranty contract not ambiguous regarding indebtedness). Because the language of the guaranty agreement is unambiguous, "the contract's construction and legal effect become a question of law for the court, and when appropriate may be decided by summary judgment." *Colonial Bank of Ala. v. Coker*, 482 So. 2d 286, 291 (Ala. 1985)

It is undisputed that Bagley Trust loaned MA Manufacturing $15,00,000. It is also undisputed that MA Manufacturing defaulted on the loan. It is undisputed that none of the $15,000,000 loan has been repaid. Consequently, as guarantor of MA Manufacturing's loan, Cash is obligated to pay the Trust up to forty nine percent (49%) of the existing "Guaranteed Indebtedness" which includes the unpaid principal, accrued but unpaid interest and collection expenses.

## IV. CONCLUSION

For the reasons as stated, the court concludes as follows:

1. That Bagley Trust's motion for summary judgment is due to GRANTED.

2. Judgment is due to be entered in favor of the plaintiff and against the defendant on its breach of contract claim, and damages awarded to the plaintiff consistent with the Guaranty Agreement.

The court will enter final judgment after the matter of damages, interest and expenses is resolved. Accordingly, it is

ORDERED that on or before January 28, 2013, counsel for the parties are DIRECTED to meet and confer, either in person or telephonically, to attempt to reach an

agreement on the amount owed to the Trust, including principal, unpaid interest and expenses.  If an agreement cannot be reached, the parties are DIRECTED to submit briefs containing calculations for damages, interest and expenses due on or before February 4, 2013.  Finally, it is

ORDERED that the pretrial conference presently set for February 5, 2013 and trial set for March 13, 2013 be and are hereby CONTINUED GENERALLY.

Done this 14th day of January, 2013.

                                      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE